UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | File No. 1:09-CR-4 |
| | : | |
| SAMUEL JONES-BROWN | : | |
| _____ | : | |

RULING ON MOTION TO SUPPRESS
(Paper 19)

I. Introduction

Defendant Samuel Jones-Brown is charged in a two-count indictment with passing and possessing counterfeit obligations or securities in violation of 18 U.S.C. § 472. He moves to suppress physical evidence and statements, arguing police lacked probable cause to arrest him, and to suppress statements he made at the police station, arguing they were taken in violation of his constitutional rights under the Fifth Amendment. (Paper 19.)

II. Background

The parties' recitations of the facts are not conflicting. On December 13, 2006, a McDonald's employee flagged down St. Johnsbury police officer Gregg MacPherson in the restaurant's parking lot. She told him Defendant attempted to pay for food at the drive-through window with a counterfeit twenty dollar bill. Officer MacPherson and Officer Jason Gray approached Defendant and asked about the bill. Defendant stated he did not know the bill was counterfeit until McDonald's refused it, and the night before he had changed four one-hundred dollar bills into twenty

1

dollar bills at a bar in New Hampshire.  He could not recall the name of the bar.  Defendant had eight twenty dollar bills in his wallet that appeared to the officers to be genuine.

Defendant gave the officers consent to search his car.  In the console between the front seats, the officers saw a green leafy substance they believed to be marijuana.  Defendant said the substance was not marijuana and the car had recently been purchased so, whatever it was must belong to the prior owner.  The officers found a locked box in the trunk that Defendant said belonged to his mother.  Defendant opened the box which contained four bundles of twenty dollar bills totaling $1,000, $1,000, $940, and $780.  Defendant said his mother had given him the money for emergencies such as to replace a flat tire because the car had very expensive tires.

Defendant was arrested and, during a subsequent search, the officers found $222 and $138 in his left and right pockets.  After Defendant was taken to the police station and uncuffed, he reached into the front of his pants which resulted in a second search revealing $2,020 in counterfeit twenty dollar bills.  Upon questioning by Officer Gray, Defendant responded that he had placed the money in the front of his pants when he saw the officers because he assumed it was counterfeit as well.  Defendant was advised of his Miranda rights after he volunteered this information.  Upon being advised of his rights, Defendant

admitted he exchanged $1,200 in genuine currency for an unknown amount of counterfeit currency at the bar in Concord, New Hampshire.

III. Discussion

    A.    Arrest

The Fourth Amendment prohibits a warrantless arrest unless the arresting officer has probable cause. United States v. Delossantos, 536 F.3d 155, 158 (2d Cir. 2008). Probable cause exists when the arresting officer, "on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008) (internal citation omitted). Probable cause is a fluid concept with a focus on probabilities, not hard certainties. Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007) (citing Illinois v. Gates, 462 U.S. 213, 31-32 (1983)). "In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . . [P]robable cause does not demand any showing that a good-faith belief be correct or more likely true than false. [] It requires only such facts as make wrongdoing or the discovery of evidence thereof probable." Id. at 156-57 (internal citations and

quotations omitted). The existence of probable cause is a question of law for the court where there is no dispute regarding the facts relied on to demonstrate probable cause. Id. at 157.

Though the probable cause determination was made by the police officers -- and therefore is not memorialized in a warrant affidavit -- the parties recitations of the facts prior to the arrest are not in conflict. Thus, whether the facts demonstrate the officers had probable cause to arrest Defendant is a question of law the Court can resolve.

Because possession of marijuana and counterfeit currency are illegal, the totality of the circumstances supports the officers' finding of probable cause to arrest Defendant. The officers had a contemporaneous account from a McDonald's employee that Defendant had attempted to use a counterfeit bill. Defendant told the officers he had changed one-hundred dollar bills into twenty dollar bills at a bar in New Hampshire the previous night but could not recall the name of the bar. Defendant gave the officers permission to search his car and they found a large amount of money in a lockbox in the trunk. The officers also found marijuana residue in the console. Defendant's explanation that the car was new and therefore the marijuana must have been the prior owner's, does not affect the probable cause analysis. Walczyk, 496 F.3d at 157 ("a showing of probable cause cannot be negated simply by demonstrating that an inference of innocence

might also have been drawn from the facts alleged"). In these circumstances, the officers' belief that a crime had been or was about to be committed was reasonable.

Defendant argues that because a conviction for possessing or passing a counterfeit obligation or security requires proof of criminal intent, and there was no such evidence at the time of the arrest, the officers lacked probable cause. (Paper 19 at 5.) However, an arresting officer need not have in hand evidence sufficient to convict. United States v. Escabi, No. CR-05-0540, 2005 WL 2148997, at *5 (E.D.N.Y. Sept. 7, 2005) (quoting Wong Sun v. United States, 371 U.S. 471, 479 (1963)). Defendant's possession of the counterfeit bill and marijuana was sufficient to lead the officers to believe a crime had been or was about to be committed.

    B.    <u>Post-Arrest Statements</u>

An individual must be advised of Fifth Amendment rights before custodial interrogation. Miranda v. Arizona, 384 U.S. 436 (1966). An individual has the right not to speak and to request an attorney while in custody and any interrogation must stop until an attorney is present. Id. at 474. The government bears the burden of establishing by a preponderance of the evidence law enforcement officers properly advised an accused of his Fifth Amendment rights and that he made a knowing and voluntary waiver

of those rights.  Id. at 444; United States v. Ramirez, 79 F.3d 298, 304 (2d Cir. 1996).

Defendant argues the statements he made at the police station before he was advised of his Miranda rights must be suppressed and "any derivative statements obtained after later Miranda warnings must be suppressed" as well.  (Paper 19 at 6.) Defendant is correct that the initial statement made in response to Officer Gray's inquiry regarding the money recovered from Defendant's pants at the station is inadmissible.  Oregon v. Elstad, 470 U.S. 298, 317 (1985) ("When police ask questions of a suspect in custody without administering the required warnings, Miranda dictates that the answers received be presumed compelled and that they be excluded").  Additionally, the government asserts it will not rely on that statement.  (Paper 20 at 4.)

However, Defendant's attempt to suppress the statements made after he was advised of his Miranda rights is misplaced.  Where an initial inculpatory statement, made in violation of Miranda was voluntary, the relevant inquiry is whether the second statement was also voluntary.  Elstad, 470 U.S. at 318. Defendant points to no facts and makes no argument to support a conclusion the second statement was involuntary.  The second statement was made voluntarily after Defendant was advised of his Miranda rights and, therefore, need not be suppressed.  See id.

6

(a suspect's choice to speak after being advised of his rights is "highly probative" of voluntariness).

IV. Conclusion

For the reasons set forth above, Defendant's motion to suppress evidence and statements (Paper 19) is DENIED except for the statement(s) of Defendant at the station prior to receiving his Miranda rights. The officers had probable cause to arrest Defendant based on the McDonald's employee's statement and the money and marijuana found in the car during the consented-to search, therefore, the evidence seized incident to the arrest will not be suppressed. Defendant's request for a hearing is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 22nd day of May, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge

7